UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**DANIEL ALAN HOLLIDAY** and
**ROBIN MARIE HOLLIDAY**,

Debtors.

Case No. **11-62315-13**

# MEMORANDUM of DECISION

At Butte in said District this 23rd day of February, 2012.

In this Chapter 13 bankruptcy, after due notice, a hearing was held February 7, 2012, in Butte on confirmation of the Debtors' First Amended Chapter Thirteen Plan filed January 25, 2012, together with objections thereto filed by the Chapter 13 Trustee, TD Auto Finance, LLC and Kenco Equipment Lease Co. Robert G. Drummond of Great Falls, Montana, the Chapter 13 Standing Trustee, appeared at the hearing. In addition, Debtors were represented at the hearing by Benjamin C. Tiller of Helena, Montana; TD Auto Finance, LLC was represented by Brian Marty of Billings, Montana; and Kenco Equipment Lease Co. was represented by Daniel D. Manson of Butte, Montana. Debtor Robin Holliday testified and Debtors' Exhibits 5 through 9 were admitted into evidence.

This Court has exclusive jurisdiction in this Chapter 13 bankruptcy under 28 U.S.C. § 1334(a). Confirmation of Debtors' Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L). This Memorandum of Decision includes the Court's finding of fact and conclusions of law.

FACTS

Debtors filed a voluntary Chapter 13 bankruptcy petition on February 24, 2010, commencing Case No. 10-60280. Upon Debtors' request, Case No. 10-60280 was, with the Chapter 13 Trustee's consent, dismissed on November 8, 2011. Debtors commenced the instant Chapter 13 case on December 16, 2011. Debtors' schedules filed January 9, 2012, show Debtors' personal residence, valued by Debtors at $170,000, is encumbered by a $73,380 obligation owing to Treasure State Bank. Debtors also own a 2008 Dodge 2500 (VIN # 3D7KS28A08G187913 ) and a 1994 Linkbelt 3400 Delimber C Series 2 Denharco DT3000. Debtors owe Kenco Equipment Lease Co. $20,800 for the 1994 Delimber and owe Chrysler Financial $32,681.23 for the 2008 Dodge.

Treasure State Bank, Kenco Equipment Lease Co., and Chrysler Financial were creditors in Debtors' first bankruptcy. When Debtors filed their first bankruptcy, the 2008 Dodge had a value of $26,600, and the 1994 Delimber had a value of roughly $27,500. Today, the 2008 Dodge has a value of $20,941 to $26,231 and the 1994 Delimber has an approximate value of $20,000. Debtors have not made a payment to Kenco Equipment Lease Co. since sometime before February 2010. Robin Holliday could not recall the last time Debtors made a payment to Chrysler Financial on the 2008 Dodge.

Debtors, in their First Amended Chapter 13 Plan, propose to make payments of $200.00 per month, with an additional $2,800 paid in months 5, 17, 29, 71 and 53. Debtors also propose to sell their personal residence. From the sale of their personal residence, Debtors propose to provide the Trustee with sufficient funds to pay Chrysler Financial, Kenco Equipment Lease Co., and the Internal Revenue Service in full with interest at the rate of 3.5%. Debtors plan does not

2

contemplate any payments to Chrysler Financial on the 2008 Dodge, Kenco Equipment Lease Co., or the Internal Revenue Service until Debtors' home sells. Debtors' plan provides that "Debtors will have two years from the date confirming this Plan to market and sell The [sic] Debtors' Real Property[,]" but makes no provision in the event Debtors' home does not sell or in the event Debtors seek to dismiss this case as they did their prior Chapter 13 bankruptcy.

The Trustee's objection to confirmation was resolved by a Stipulation filed February 13, 2012, which Stipulation was approved by the Court on that same date. Thus, the sole remaining objections to confirmation are those of TD Auto Finance, LLC and Kenco Equipment Lease Co. TD Auto Finance, LLC, on behalf of Chrysler Financial, and Kenco Equipment Lease Co. object to confirmation of Debtors' First Amended Chapter 13 plan arguing Debtors' plan fails to provide adequate protection to Chrysler Financial, and Kenco Equipment Lease Co. as required by 11 U.S.C. § 1325(a)(5)(B)(iii)(II) and further fails to provide equal monthly payments under 11 U.S.C. § 1325(a)(5)(B)(iii)(I).

APPLICABLE LAW and DISCUSSION

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met. *In re Byrn,* 410 B.R. at 645; *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995). Section 1325(a) of the Bankruptcy Code provides that if a debtor does not propose to surrender a secured creditor's collateral and if that secured creditor objects to confirmation, then the court shall confirm the debtor's plan only if–

    (B)(i) the plan provides that--

3

>>(I) the holder of such claim retain the lien securing such claim until the earlier of--

>>>(aa) the payment of the underlying debt determined under nonbankruptcy law; or

>>>(bb) discharge under section 1328; and

>>(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

>(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

>(iii) if--

>>(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

>>(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan[.]

On § 1325(a)(5)(B)(iii)(II), 8 COLLIER ON BANKRUPTCY, ¶ 1325.06[3][b][ii][B] explains:

> Section 1325(a)(5)(B)(iii)(II) simply codifies once more the right of the holder of an allowed secured claim to receive payments during the plan that are sufficient to provide adequate protection to the creditor's interest in the property, as already provided by sections 362 and 363. For the period prior to plan confirmation, section 1326(a)(1)(C), similarly provides for payments sufficient to provide adequate protection, to be made directly to the creditor unless the court orders otherwise.
>
> The fact that provision of adequate protection has now been explicitly included in the standards for plan confirmation further buttresses those cases which have held that a creditor may not, after confirmation, seek relief from the stay based on a lack of adequate protection because the issue of adequate protection should have been raised before confirmation and confirmation of the plan is *res judicata* on the issue of adequate protection.

Section 1322(b)(8) allows a plan to be partially funded through the sale of property of the estate or property of a debtor, but issues of good faith, feasibility and adequate protection arise when a plan proposes only token monthly payments to the secured creditor. *In re Lindsey*, 183 B.R. 624, 627 (Bankr. D. Idaho 1995). The Debtors' Plan in the instant case proposes no monthly payments on Chrysler Financial and Kenco Equipment Lease Co.'s secured claims. Given the pending objections, Debtors have the burden under § 1325(a)(5)(B)(iii)(II) of showing that Chrysler Financial and Kenco Equipment Lease Co. are adequately protected.

The term "adequate protection" is not defined in the Bankruptcy Code. This Court, in the context of 11 U.S.C. § 362(d)(1), discussed the concept of adequate protection in *In re WRB West Associates Joint Venture*, 106 B.R. 215, 219-20 (Bankr. D.Mont. 1989):

> In a classic sense, adequate protection payments should be applied to compensate a secured creditor for any diminution in the value of collateral as a result of use, depreciation, destruction or other caused reduction in value. 11 U.S.C. § 361; 11 U.S.C. § 363(e); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1412 n. 57 (5th Cir.1986) (collecting supporting cases), aff'd, *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, [484] U.S. [365], 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *General Elec. Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987, 994 (Bkrtcy.D.Utah 1982) ('adequate protection was protection ... against depreciation of the collateral when it erodes the allowed secured claim.')."

[*Matter of Kain*,86 B.R. 506, 511, 513 (Bankr. W.D. Mich. 1988)]

On the issue of adequate protection required by § 363(d) and (e), *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.1987) holds:

> "In recognition of the powers created in bankruptcy law to adjust debts and creditors' interest, Congress realized the need to protect creditors from unfair treatment. Hence, it codified the concept of adequate protection into the several aggressive remedies available to debtors and

> bankruptcy trustees. *See 2 Collier on Bankruptcy* ¶ 361.01[1] (15th ed. 1979). The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy. House Rep. No. 95-595, 95 Cong., 2d Sess. 53, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6295. In determining these values, the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis. *In re Martin*, 761 F.2d 472 (8th Cir.1985); *In re Monroe Park*, 17 B.R. 934 (D.C.Del.1982). Since 'value' is the linchpin of adequate protection, and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact. *In re Martin*, 761 F.2d at 472; *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir.1984); *In re Bank Hapoalim B.M., Chicago Branch v. E.L.I.*, Ltd., 42 B.R. 376 (D.C.N.D.Ill.1984); *Brookfield Production Credit Association v. Borron*, 36 B.R. 445 (D.C.E.D.Mo.1983), *aff'd*, 738 F.2d 951 (8th Cir.1984)."

In *Mellor* the Ninth Circuit Court of Appeals recognized that an "equity cushion", while not specifically mentioned in the Bankruptcy Code, is a common form of adequate protection:

> [I]t is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court. *In re Curtis*, 9 B.R. at 112. In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection. *In re San Clemente Estates*, 5 B.R. 605, 610 (B.Ct.S.D.Cal.1980); *In re Tucker*, 5 B.R. 180, 182 (B.Ct.S.D.N.Y.1980); 2 COLLIER ON BANKRUPTCY, § 361.02[3] at 361-9; (15th ed. 1979). A sufficient equity cushion has been found to exist although not a single mortgage payment had been made. *In re Curtis*, 9 B.R. at 111.

*Id*. *See also In re Interstate Distrib. Co., Inc.*, 13 Mont. B.R. 86, 89-90 (D. Mont. 1993) (Recognizing that an equity cushion is the classic form of protection for a secured debt, and its existence, standing alone, can provide adequate protection under the Bankruptcy Code.) The Ninth Circuit Court of Appeals in *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir. 1984), defined the term "equity cushion" as "the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during time the automatic stay remains in effect." *Id.* at 1400, n.2.

The record is clear that Debtors do not have equity in either the 2008 Dodge or the 1994 Delimber. It is likewise clear that Chrysler Financial and Kenco Equipment Lease Co. are not adequately protected. Debtors have, to the detriment of Chrysler Financial and Kenco Equipment Lease Co., not made any payments to either Chrysler Financial or Kenco Equipment Lease Co. for over two years, even though they have enjoyed the benefits of the automatic stay during that period of time.

Debtors' proposed First Amended Chapter 13 plan, which provides for no payments to Chrysler Financial or Kenco Equipment Lease Co. for another two years, does not protect Chrysler Financial or Kenco Equipment Lease Co.'s secured position from further decline, particularly if Debtors are not successful in selling their home. Thus, Debtors' plan does not satisfy § 1325(a)(5)(B)(iii)(II).

Chrysler Financial and Kenco Equipment Lease Co. also object that Debtors' plan does not provide for monthly payments as required by § 1325(a)(5)(B)(iii)(I). While the plain language of § 1325(a)(5)(B)(iii)(I) does not appear to preclude a plan from providing single lump sum payments, the Court finds that Debtors' proposed plan does not satisfy the letter and spirit of the Bankruptcy Code. As noted by one court, "undoubtedly one of the reasons Congress enacted § 1325(a)(5)(B)(iii)(I)" was to curb the abuses resulting from confirmed plans with balloon payments, whereby the debtors dismissed the case if unable to timely sell or refinance, and worse, sometimes re-filed and then "asked for another four or five illusory years." *In re Acosta*, 2009 WL 2849096, *3 (Bankr. N.D.Cal. 2009).

As previously noted, Debtors' plan, as drafted, provides no protection to Chrysler Financial and Kenco Equipment Lease Co. in the event Debtors do not sell their home. While

Chrysler Financial and Kenco Equipment Lease Co. would not necessarily benefit from a drop dead provision--as Chrysler Financial and Kenco Equipment Lease Co. do not have a security interest in Debtors' real property--Debtors, at a minimum, should have produced evidence as to past marketing efforts, the state of the market for their home, current sale prospects, the existence and maintenance of the market for their home, the existence and maintenance of any equity cushion, and all other circumstances that bear on whether Chrysler Financial and Kenco Equipment Lease Co. have any reasonable way of seeing their way out of the case financially whole. On this issue, Debtors' have not sustained their burden.

For the reasons discussed above, the Court will enter a separate order as follows:

IT IS ORDERED that the objections to confirmation of Debtors' First Amended Chapter 13 Plan filed by TD Auto Finance, LLC and Kenco Equipment Lease Co. are sustained; confirmation of Debtors' First Amended Chapter 13 Plan is denied; Debtors shall have fourteen (14) days from the date of this Memorandum of Decision and Order to file a further amended Chapter 13 plan; and a hearing on confirmation of Debtors' further amended Chapter 13 plan shall be held **Tuesday, April 10, 2012, at 09:00 a.m.**, or as soon thereafter as the parties can be heard, in the 2ND FLOOR COURTROOM, FEDERAL BUILDING, 400 N. MAIN, BUTTE, MONTANA.

        BY THE COURT

        /s/ Ralph B. Kirscher
        HON. RALPH B. KIRSCHER
        U.S. Bankruptcy Judge
        United States Bankruptcy Court
        District of Montana