UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**DANIEL ALAN HOLLIDAY** and
**ROBIN MARIE HOLLIDAY**,

Debtors.

Case No. **11-62315-13**

# MEMORANDUM of DECISION

At Butte in said District this 4th day of May, 2012.

In this Chapter 13 bankruptcy, after due notice a hearing was held on April 10, 2012, in Butte on confirmation of the Debtors' Second Amended Chapter 13 Plan (the "Plan") filed March 8, 2012, together with objections thereto filed by the Chapter 13 Trustee, TD Auto Finance, LLC ("TD") and Kenco Equipment Lease Co. ("Kenco"). The Chapter 13 Standing Trustee Robert G. Drummond of Great Falls, Montana, appeared at the hearing and stated that his feasibility objection would be cured by Stipulation with the Debtors, which was filed and approved by Order entered April 19, 2012. Debtors were represented at the hearing by Benjamin C. Tiller ("Tiller") of Helena, Montana, and Robin Marie Holliday ("Robin") testified. TD was represented by Brian Marty of Billings, Montana; and Kenco was represented by Daniel D. Manson of Butte, Montana. Debtors' Exhibits ("Ex.") 5, 6, 7, 8, 9, 11, and 12 were admitted into evidence. Without objection the Court granted Debtors' motion to take judicial notice that the prime interest rate is 3.25 percent (3.25%). At the conclusion of the parties' cases-in-chief the Court took the contested matter of confirmation under advisement. After review of the record, the objections to confirmation will be overruled and Debtors' Plan confirmed for the reasons set

forth below.

This Court has exclusive jurisdiction in this Chapter 13 bankruptcy under 28 U.S.C. § 1334(a). Confirmation of Debtors' Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L). This Memorandum of Decision includes the Court's finding of fact and conclusions of law.

## FACTS

The Debtors Daniel and Robin Holliday live at 29 Bear Gulch Road in Drummond, Montana, where Daniel is self employed as a logger. Robin testified that they have been in the logging business for 15 years. She performs the bookkeeping.

Debtors filed a voluntary Chapter 13 bankruptcy petition on February 24, 2010, commencing Case No. 10-60280-13. Upon Debtors' request, Case No. 10-60280 was, with the Chapter 13 Trustee's consent, dismissed on November 8, 2011. Debtors commenced the instant Chapter 13 case on December 16, 2011. Debtors' schedules filed January 9, 2012, show Debtors' personal residence, valued by Debtors at $170,000, is encumbered by a $73,380 obligation owing to Treasure State Bank. Debtors also own a 2008 Dodge 2500, a 2006 Dodge and a 1994 Linkbelt 3400 Delimber C Series 2 Denharco DT3000. Debtors owe Kenco $24,299[1] for the 1994 Delimber. They owe TD the sum of $32,681.23 secured by the 2008 Dodge (Proof of Claim No. 8), and owe TD $30,086.20 for the 2006 Dodge (Claim 7)[2].

Robin testified that they use both Dodge pickups and the Delimber in their logging business to generate their income. She testified that they use the 2006 Dodge to commute to the

---

[1] According to Proof of Claim No. 12 filed by Kenco on April 6, 2012.

[2] TD is identified in the Plan as Chrysler Financial LLC. For clarity this Memorandum will refer to it as TD.

logging sites on dirt roads, transport fuel and tools, and they use the 2008 Dodge mostly to pick up parts and tools.  They put approximately 20,000 to 25,000 miles on their vehicles per year.  Both vehicles are insured with comprehensive coverage, but are not under warranty.

Robin testified regarding the value and condition of the 2008 Dodge and the 2006 Dodge.  She testified that the 2008 Dodge is in fair condition, and in better condition than it used to be, and the 2006 Dodge is in fair condition and has lost minimal value.  Debtors perform most of their own maintenance on the pickups.

Treasure State Bank, Kenco, and TD were creditors in Debtors' first bankruptcy.  When Debtors filed their first bankruptcy, the 2008 Dodge had a value of $26,600, and the 1994 Delimber had a value of roughly $27,500.  Debtors introduced Kelley Blue Book valuations for the 2006 Dodge and 2008 Dodge.  Ex. 5 and 7 show the 2010 value of the 2006 Dodge in fair condition as $18,680, and the 2012 value as $17,954.  Ex. 6 and 8 showing the 2010 and 2012 values for the 2008 Dodge in fair condition as $25,100 and $24,381, respectively.  Robin testified that the 2006 and 2008 Dodge pickups depreciate at the rate of approximately $50 per month according to the Kelley Blue Book.  Her testimony is uncontroverted.

Robin testified that the Delimber still has a value of $27,000 and has not lost any value since 2010[3].  She testified that the Debtors perform routine maintenance on the DeLimber as well as preventative maintenance.  Under cross examination testified that the Debtors regularly check and change hydraulic lines and fluids, and that they have always been able to pay for the maintenance and repairs of the Delimber and the 2 Dodge 2500 trucks out of pocket even though

---

[3] Robin corrected her testimony from the last hearing and explained that she meant that the amount of Kenco's claim was approximately $20,000, not the value of the DeLimber.

3

they have not set aside funds to pay for the repairs.

Debtors, in their current Plan, propose to make payments of $200.00 per month for months 1 and 2, and $350 per month for 58 months. By stipulation with the Trustee, adequate protection payments are to begin during the month following confirmation and the plan payments are sufficient to pay all necessary adequate protection payments. Based on that stipulation the Trustee withdrew his feasibility objection and consented to confirmation.

Debtors' Plan proposes to sell their residence in Drummond. Robin testified that Debtors have employed a real estate agent[4] who is knowledgeable about the real estate market in Drummond. The agent performed a comparative market analysis, listed the residence on the MLS system for $164,900 (Ex. 9, 10, 11). The house had been on the market for 2 months at the time of the confirmation hearing on April 10, 2012. Robin testified that they had not received any offers, but that they listed the house beginning in the winter which is a slower market. She testified that Debtors have at least $34,000 in equity in their home.

From the sale of their residence, Debtors propose to provide the Trustee with sufficient funds to pay Treasure State Bank, the Internal Revenue Service ("IRS"), Kenco and TD in full with interest. TD is to receive 4.5% on its claims secured by the 2006 Dodge, and 3.5% on its claim secured by the 2008 Dodge. Kenco is to be paid with an interest rate of 3.5%. The IRS is to be paid with interest at the rate of 3.0%. TD and Kenco are to receive adequate protection payments of $100 per month until paid in full, beginning the month after confirmation.

Debtors' Plan provides that "Debtors will have one year from the date confirming this

---

[4]Ex. 9 and 12 identify the listing firm as Pintlar Territories of Philipsburg, Montana. Realtor Karyn Byhre Hansen's employment as real estate agent was approved on February 17, 2012.

4

Plan to market and sell The [sic] Debtors' Real Property[,]" but makes no provision in the event Debtors' home does not sell or in the event Debtors seek to dismiss this case as they did their prior Chapter 13 bankruptcy. Robin testified that the adequate protection payments to TD and Kenco are greater than the decrease in value of their security through depreciation. No evidence in the form of expert witness testimony or exhibits were offered to the contrary by Kenco or TD, and thus Robin's testimony is uncontroverted.

With respect to feasibility, Robin testified that she feels Debtors' financial condition is improving. The Plan provides that from the sale proceeds Debtors shall pay a portion of their exempt homestead funds to the secured claims, or they will surrender the creditors collateral. The approved Stipulation with the Chapter 13 Trustee cured his feasibility objection.

Kenco objects to confirmation on the grounds the Plan fails to provide it adequate protection and impermissibly attempts to reduce an interest rate stipulated in the prior case to be 9%, to 3.5%. TD objects that the Plan fails to provide adequate protection for its claim, lacks feasibility, and only provides for a 4.5% interest rate instead of the contract price of 8.69%.

## APPLICABLE LAW and DISCUSSION

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met. *In re Byrn,* 410 B.R. at 645; *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995). Section 1325(a) of the Bankruptcy Code provides that if a debtor does not propose to surrender a secured creditor's collateral and if that secured creditor objects to confirmation, then the court shall confirm the debtor's plan only if–

>   (B)(i) the plan provides that--
>
>>   (I) the holder of such claim retain the lien securing such claim until the earlier of--
>>
>>>   (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>>>
>>>   (bb) discharge under section 1328; and
>>
>>   (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>
>   (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>
>   (iii) if--
>
>>   (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>>
>>   (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan[.]

On § 1325(a)(5)(B)(iii)(II), 8 COLLIER ON BANKRUPTCY, ¶ 1325.06[3][b][ii][B] explains:

>   Section 1325(a)(5)(B)(iii)(II) simply codifies once more the right of the holder of an allowed secured claim to receive payments during the plan that are sufficient to provide adequate protection to the creditor's interest in the property, as already provided by sections 362 and 363. For the period prior to plan confirmation, section 1326(a)(1)(C), similarly provides for payments sufficient to provide adequate protection, to be made directly to the creditor unless the court orders otherwise.
>
>   The fact that provision of adequate protection has now been explicitly included in the standards for plan confirmation further buttresses those cases which have held that a creditor may not, after confirmation, seek relief from the stay based on a lack of adequate protection because the issue of adequate

protection should have been raised before confirmation and confirmation of the plan is *res judicata* on the issue of adequate protection.

Section 1322(b)(8) allows a plan to be partially funded through the sale of property of the estate or property of a debtor, but issues of good faith, feasibility and adequate protection arise when a plan proposes only token monthly payments to the secured creditor. *In re Lindsey*, 183 B.R. 624, 627 (Bankr. D. Idaho 1995). The Debtors' pending Plan proposes $100 monthly adequate protection payments to TD and Kenco for their secured claims. Given the pending objections, Debtors have the burden under § 1325(a)(5)(B)(iii)(II) of showing that TD and Kenco are adequately protected.

The term "adequate protection" is not defined in the Bankruptcy Code. This Court, in the context of 11 U.S.C. § 362(d)(1), discussed the concept of adequate protection in *In re WRB West Associates Joint Venture*, 106 B.R. 215, 219-20 (Bankr. D.Mont. 1989):

> In a classic sense, adequate protection payments should be applied to compensate a secured creditor for any diminution in the value of collateral as a result of use, depreciation, destruction or other caused reduction in value. 11 U.S.C. § 361; 11 U.S.C. § 363(e); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1412 n. 57 (5th Cir.1986) (collecting supporting cases), *aff'd, United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, [484] U.S. [365], 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *General Elec. Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987, 994 (Bkrtcy.D.Utah 1982) ('adequate protection was protection ... against depreciation of the collateral when it erodes the allowed secured claim.')."

[*Matter of Kain*, 86 B.R. 506, 511, 513 (Bankr. W.D. Mich. 1988)]

On the issue of adequate protection required by § 363(d) and (e), *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.1987) holds:

> "In recognition of the powers created in bankruptcy law to adjust debts and creditors' interest, Congress realized the need to protect creditors

7

> from unfair treatment. Hence, it codified the concept of adequate protection into the several aggressive remedies available to debtors and bankruptcy trustees. *See 2 Collier on Bankruptcy* ¶ 361.01[1] (15th ed. 1979). The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy. House Rep. No. 95-595, 95 Cong., 2d Sess. 53, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6295. In determining these values, the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis. *In re Martin*, 761 F.2d 472 (8th Cir.1985); *In re Monroe Park*, 17 B.R. 934 (D.C.Del.1982). Since 'value' is the linchpin of adequate protection, and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact. *In re Martin*, 761 F.2d at 472; *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir.1984); *In re Bank Hapoalim B.M., Chicago Branch v. E.L.I.*, Ltd., 42 B.R. 376 (D.C.N.D.Ill.1984); *Brookfield Production Credit Association v. Borron*, 36 B.R. 445 (D.C.E.D.Mo.1983), *aff'd*, 738 F.2d 951 (8th Cir.1984)."

In *Mellor* the Ninth Circuit Court of Appeals recognized that an "equity cushion", while not specifically mentioned in the Bankruptcy Code, is a common form of adequate protection:

> [I]t is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court. *In re Curtis*, 9 B.R. at 112. In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection. *In re San Clemente Estates*, 5 B.R. 605, 610 (B.Ct.S.D.Cal.1980); *In re Tucker*, 5 B.R. 180, 182 (B.Ct.S.D.N.Y.1980); 2 COLLIER ON BANKRUPTCY, § 361.02[3] at 361-9; (15th ed. 1979). A sufficient equity cushion has been found to exist although not a single mortgage payment had been made. *In re Curtis*, 9 B.R. at 111.

*Id*. See also In re Interstate Distrib. Co., Inc., 13 Mont. B.R. 86, 89-90 (D. Mont. 1993) (Recognizing that an equity cushion is the classic form of protection for a secured debt, and its existence, standing alone, can provide adequate protection under the Bankruptcy Code.) The Ninth Circuit Court of Appeals in *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir. 1984), defined the term "equity cushion" as "the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the

value of the property during time the automatic stay remains in effect." *Id.* at 1400, n.2.

The record shows that Debtors do not have equity in either the Dodge pickups or the Delimber. However, the Plan now provides for payments of adequate protection of $100 per month to TD and Kenco during the Plan. Linda's testimony that those payments exceed the depreciation of the Dodge pickups and Delimber is uncontroverted.

"[A]rguments and statements of counsel are not evidence." *Wood v. Stratos Prod. Dev., LLC (In re Ahaza Sys.)*, 482 F.3d 1118, 1122 n.1 (9th Cir. 2007). The contentions stated in TD's and Kenco's objections are attorney argument, not admissible in evidence and therefore not relevant. *Hurley v. Student Loan Acquisition Auth. of Ariz., et al.*, (*In re Hurley*), 258 B.R. 15, 23 (Bankr. D. Mont. 2001) (An attorney's argument is not evidence); *United States v. Velarde-Gomez*, 224 F.3d 1062, 1073 (9th Cir. 2000); *Exeter Bancorporation v. Kemper Securities Group, Inc.*, 58 F.3d 1306, 1312 n.5 (8th Cir. 1995)(Statements of counsel are not evidence and do not create issues of fact), citing *United States v. Fetlow*, 21 F.3d 243, 248 (8th Cir. 1994), *cert. denied*, 513 U.S. 977, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994). Therefore, based on the evidence in the record, the Court finds that TD and Kenco are adequately protected during the pendency of the Plan by the $100 monthly adequate protection payments. Debtors' proposed Plan protects TD and Kenco's secured positions from further decline while Debtors sell their residence.

The Debtors' Plan provides for a "cure-by-sale" of Debtors' debt to Treasure State Bank, which this Court decided may satisfy the confirmation requirements of 11 U.S.C. § 1322(b)(3),

(b)(5)[5] & (c)(1)[6]. *In re Siegfried*, 16 Mont. B.R. 289, 301 (Bankr. D. Mont. 1997). The United States District Court for the District of Montana has held that a debtor's default may be cured by sale of a residence as in *Siegfried*. *In re Murphy-Reyner*, 19 Mont. B.R. 141, 143-44 (D. Mont. 2001).

As in *Siegfried*, the Debtors' Plan provides for the payment in full of Treasure State Bank's allowed claim, including interest, through the sale of their residence. *Siegfried*, 16 Mont. B.R. at 302. The Plan's one year deadline from the date of confirmation to sell Debtors' residence is 2 years shorter than the 3 year term in *Siegfried*, and their plan payments are more than the plan payments in *Siegfried*. *Id.* at 302. Treasure State Bank's secured claim is in the amount of $86,285.78, and Debtors' Plan commits their exempt homestead to paying off secured claims, including Kenco and TD.

Debtors' Plan, as proposed, provides adequate protection to TD and Kenco while they try to sell their residence for 1 year. Robin testified that if their residence does not sell they will turn over the vehicles and equipment, and that testimony corroborates the Plan provision. Contrasted with prior proceedings in Debtors' bankruptcy cases, Debtors have produced evidence as to their marketing efforts, the state of the market, current sale prospects, and their equity cushion, which tend to show that TD and Kenco have a reasonable way of seeing their way out of this case financially whole. The Court finds that Debtors have satisfied their burden.

---

[5]"[A] plan may provide for the curing of a default within a reasonable time. § 1322(b)(5)." *In re Dunn*, 399 B.R. 909, 911 (Bankr. W.D. Wash. 2009).

[6]Section 1322(c)(1) provides: "Notwithstanding subsection (b)(2) and applicable nonbankruptcy law – (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) or subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law".

Both TD and Kenco object that Debtors' Plan impermissibly reduces their respective interest rates. The Plan provides for interest rates for TD's claims of 4.5% and 3.5%, and 3.5% for Kenco's claim. The current prime rate is 3.25%, so the Plan provides for a reasonable base rate of interest plus an additional amount of interest to cover risk.

Section 1325(a)(5)(B)(ii) which provides that, with respect to each allowed secured claim provided for by the plan, "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." Under this section a Chapter 13 plan must provide for payments to secured creditors totaling no less than the present value of the secured creditors' claims. *In re Hungerford*, 19 Mont. B.R. 103, 111 (Bankr. D. Mont. 2001). The Ninth Circuit Bankruptcy Appellate Panel noted in *Trejos v. VW Credit, Inc., et al. (In re Trejos)*, 374 B.R. 210, 220 n.9 (9th Cir. BAP 2007):

> The text of § 1325(a)(5)(B)(ii) did not change under BAPCPA[7]. The phrase "as of the effective date" previously was recognized to require an interest component be paid so as to ensure that the creditor receive the present value of its claim. The Supreme Court addressed the calculation of present value interest under § 1325(a)(5)(B)(ii) in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004), and set "prime plus" as the proper method for determining the interest rate that would provide present value. Most courts that have considered the issue have held that, since § 1325(a)(5)(B)(ii) remains unchanged under BAPCPA, *Till* remains valid under BAPCPA. Because the issue is not before us in this appeal, we save it for another day.

The evidentiary burden is placed on the creditor to substantiate any risk adjustment over a moderate level. 8 COLLIER ON BANKRUPTCY, ¶ 1225.03[4][c]; *Till*, 541 U.S. at 484-85. At the confirmation hearing TD and Kenco did not offer any evidence regarding risk factors or a more

---

[7]Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub.L. 109-8) ("BAPCPA").

appropriate interest rate, and therefore the Court finds that they failed their evidentiary burden under *Till*.

Debtors established the prime rate of interest is 3.25%. No evidence or argument was offered by TD and Kenco to the contrary; the Court finds that the 3.5% and 4.5% respective rates of interest on their secured claims is supported by the only evidence admitted at the hearing. The Court concludes that Debtors' Plan satisfies the requirements of § 1325(a)(5)(B)(ii) for an appropriate cramdown rate for TD's and Kenco's secured claims under the *Till* formula approach.

In conclusion, the Court finds that the Debtors have satisfied their burden of proof under § 1325 for confirmation.

**IT IS ORDERED** that the objections to confirmation of Debtors' Second Amended Chapter 13 Plan filed by TD and Kenco are overruled; and a separate Order shall be entered confirming Debtors' Second Amended Chapter 13 Plan filed on March 8, 2012.

BY THE COURT

_____
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana